No. 12,396.

ROBINSON ET AL. *v*. ALFALFA DITCH COMPANY ET AL.

(5 P. [2d] 1115)

Decided October 26, 1931.   Rehearing denied December 7, 1931.

Mr. CLYDE H. STEWART, Messrs. FAIRLAMB & FAIRLAMB, for plaintiffs in error.

Mr. Milton R. Welch, for defendants in error.

*En Banc.*

Mr. Justice Butler delivered the opinion of the court.

The Alfalfa Ditch Company, called herein the plaintiff, sued H. L. Robinson, J. S. Robinson, Andy Wicks, Gerritt Feekes, G. F. Hawkins and A. C. Tinsley, called herein the defendants, seeking a decree that the defendants have no right to take any portion of 20 second-feet of water that had been decreed to the plaintiff's ditch. All of the stockholders of the plaintiff, by intervention, joined it in attacking the defendants' claimed right to the use of a part of the water. The trial court granted the relief sought by the plaintiff and its stockholders, and the defendants seek a reversal of the judgment.

The question for determination is whether the claims of the defendants' grantors, James Zaninetti and Caesar Zanola, were included in a water decree made in 1889. If they were, the judgment herein was wrong and should be reversed; if they were not, the judgment was right and should be affirmed.

We have held repeatedly that decrees under the water adjudication statute determine only the priorities of the several ditches and the amount of water awarded thereto; that in such proceedings the court has no jurisdiction to determine ownership or property rights in the ditches, or to determine who has the right to use the water awarded to the various ditches. The citation of one case will suffice. *Oppenlander v. Left Hand Ditch Co.*, 18 Colo. 142, 31 Pac. 854. In its water decree of 1889, therefore, the court did not attempt to determine the question now submitted to us.

On December 16, 1881, John B. Hart located the Alfalfa ditch and posted a notice claiming "4,000 inches of water." Work on the ditch was commenced on the 17th. On February 14, 1882, an oral contract was made by

Hart with W. A. Shepherd and J. Weaver, relating to the use of the ditch by Shepherd and Weaver. At the water hearing before the referee, Hart was called as a witness in behalf of Zaninetti and Zanola, and testified that the oral contract was that Shepherd and Weaver were not to have an interest in the water rights of the Alfalfa ditch, but were only allowed to convey water through the ditch. On October 18, 1882, the contract was reduced to writing. The following is a copy:

"This indenture, made and entered into this 18th day of October, 1882, Witnesseth:

"That J. B. Hart of the County of Gunnison and State of Colorado, lessor, does hereby lease, demise and let unto W. A. Shepherd and J. Weaver of said County and State, lessees, the right to use the Alfalfa Ditch from the headgate thereof down to where it enters the Basin, as follows: The lessees may let in at said headgate of said ditch any quantity of water they may need to irrigate their land below and let the same out of said ditch at any point between said headgate and where said ditch enters said basin—but not at any time to draw off enough water to lessen the lessor's water rights as they now exist. Said ditch is situate on and is eight miles north of the mouth of Surface Creek in the said County of Gunnison and State of Colorado and known as J. B. Hart's Ditch. To have and to use said ditch as aforesaid for the purpose only as aforesaid for the period of ninety-nine years from and after the date hereof, the consideration therefor being that said lessees have heretofore done and performed labor on and about said ditch. Said privilege hereinbefore granted is hereby restricted to the use of water by the said lessees and their grantees to their respective ranches of one hundred and sixty acres each now occupied by them on said Surface Creek. In witness whereof, I hereby set my hand and seal the day and date above written.                    J. B. Hart.   (Seal)"

On August 16, 1886, the ditch and water rights were deeded to the plaintiff. Water adjudication proceedings

570

were commenced in June, 1887. On December 6, the plaintiff filed with the referee its statement, claiming priority as of December 17, 1881. On September 11, 1888, Zaninetti and Zanola, who had succeeded to the interests of Shepherd and Weaver, filed with the referee their statement, claiming priority for the Alfalfa Ditch Enlargement No. 1, as of February 14, 1882, and declaring:

"Our rights to the use of this ditch for the conveyance of water from Surface Creek to our farms is under and by virtue of a contract made with the owners of the Alfalfa Ditch in February, 1882, which contract was on October 18, 1882, reduced to writing in a form of lease for ninety-nine years by the then owner of the Alfalfa Ditch of the first part and W. A. Shepherd and J. Weaver, our grantors, of the second part, which lease has been assigned to these claimants."

The court did not approve the report filed by the referee, but appointed another referee, who made a report recommending a decree awarding to the Alfalfa ditch priority No. 6, as of November 24, 1884, for 20 cubic feet of water per second, absolutely, and an additional quantity conditionally. With reference to Zaninetti and Zanola's claim based upon the so-called "Enlargement No. 1," he found that the testimony did not show any enlargement, or any record of any enlargement, but that it showed that the Alfalfa ditch as originally constructed would carry more water than enough to supply the stockholders of the Alfalfa Ditch Company, and showed a contract between the grantors of the ditch company and the grantors of Zaninetti and Zanola, granting them the right to convey water through the ditch. The referee denied the claim for Enlargement No. 1. Zaninetti and Zanola excepted to the report, but their exception was overruled by the court. The court approved the report with the exception that the court awarded the ditch priority No. 1 as of December 17, 1881.

Part of the court's decree relating to the Alfalfa ditch is as follows: "That said ditch is entitled to Priority No.

1 and is claimed by the Alfalfa Ditch Company. It is supplied from Surface Creek * * *. That there be permitted to flow into said ditch for the use and benefit of the parties lawfully entitled thereto Priority No. 1, by virtue of appropriation by original construction, one hundred and six cubic feet per second of time, providing that there shall not be permitted to flow into said ditch to exceed twenty second feet until such time as said parties shall increase their cultivated, meadow and pasture lands thereunder to more than 791 acres and then the increase in the amount so permitted to flow in said ditch shall only be in the ratio and proportion of one cubic foot per second of time for each 40 acres of such additional lands, providing further that such increase shall be made with reasonable diligence.''

At the water hearing before the referee, John B. Hart testified to the total acreage irrigated under the ditch. He said that in that acreage he included the 60 acres that had been irrigated by Zaninetti and Zanola, and also all other land lying under'the ditch; that Zaninetti and Zanola owned none of the water of the Alfalfa ditch, but ''only a right to convey water through said ditch.''

Counsel for the defendants contend that the award of 20 second-feet to the ditch was 2 second-feet more than it would have been entitled to had the Zaninetti and Zanola land not been included in'the computation of the acreage lying under the ditch, and, therefore, that it must be assumed that the court intended to, and did in fact, award the 2 second-feet for the benefit of Zaninetti and Zanola. But the evidence shows that 2 second-feet would be more than their cultivated land would entitle them to, on the basis adopted by the referee and the court, of 1 cubic foot of water per second for each 40 acres of land.

The contract made by the predecessors in interest of the litigants contemplated some independent appropriation of water by the lessees, and the right for 99 years to convey that water through the ditch to certain specified lands then occupied by them. It permitted the

lessees to let into the ditch the required water and to withdraw that water from the ditch, with the express limitation that the lessees should not at any time "draw off enough water to lessen the lessor's water rights" as they then existed; in other words, that the lessees should never take from the ditch more water than they put into the ditch, so as to interfere with the ditch priority. That such was the understanding of Zaninetti and Zanola is shown by the fact that in the water adjudication proceeding they expressly based their claim upon a so-called enlargement of the ditch, called by them "Enlargement No. 1," and asserted a right "to the use of the ditch for the conveyance of water" by reason of the contract of February, 1882, reduced to writing October 18 of the same year. That claim—their only claim—was disallowed by the referee and the court. The reasons for disallowing the claim were because of the findings that there had been no enlargement of the ditch, and no recording of a sworn statement. Section 2 of Session Laws of 1881, p. 162, required such recording within 90 days after the commencement of construction or enlargement of a ditch, etc., and provided that "no priority of right for any purpose shall attach to any such construction or enlargement until such record is made." From the date of the passage of that act until 1899 that section was generally regarded as mandatory. In 1899 this court, in *Lamar Canal Co. v. Amity Land & Irrigation Co.*, 26 Colo. 370, 58 Pac. 600, held that the subject-matter of that section was not clearly stated in the title to the act, and therefore that that section was void as in conflict with section 21, article 5, of the Constitution of this state. If such contention had been made in the adjudication proceeding, no doubt the court would have sustained it. When their exceptions to the referee's report were overruled, Zaninetti and Zanola pursued the matter no further. They did not seek a review of the decree, and it became final.

The defendants claim that by virtue of long user

of the water by themselves and their predecessors in interest, under claim of right, and acquiescence therein by the plaintiff and its predecessors in interest, the claim of the defendants should be held good. But the water commissioner testified that the water used by Zaninetti and Zanola was from the Twin Lakes reservoir, owned by them, and that they did not use or claim at any time any part of the first decree of the Alfalfa ditch; and Leslie Hart testified that Zaninetti was using reservoir water and told the witness that he did not claim anything in the Alfalfa ditch but a running right for reservoir water; and at the water hearing before the referee Zaninetti testified that he did not claim any right to the water of the Alfalfa ditch claimed by the ditch company; and several witnesses testified that they shut down the Zaninetti and Zanola headgate on a number of occasions, one witness saying that he shut it down when he found decreed water running, but left it alone when they were running reservoir water. The evidence relating to user, claim of right and acquiescence, however, was conflicting. The trial court found the issues for the plaintiff, and we cannot disturb its findings.

The trial court was right in holding that the defendants are not entitled to any part of the 20 second-feet decreed to the Alfalfa ditch, and in enjoining them from claiming or asserting any rights in the priority decreed to that ditch.

Our decision, of course, is limited to the respective rights of the parties to this litigation.

The judgment is affirmed.

Mr. Justice Campbell did not participate.